UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

CARL JACKSON                                                                PLAINTIFF

v.                                    CASE NO. 4:09-CV-00257-BSM

SAFECO NATIONAL INSURANCE
COMPANY; LITTLE ROCK COMMUNITY
MENTAL HEALTH CENTER; KIMBERLY
WILLIAMS, in her official and individual
capacities; PATRINA TABURN, in her official
and individual capacities; TRACY DAVIS, in her
official and individual capacities; B.J. ROBISON,
in his official and individual capacities; DR. GREG
KUCZINSKI, in his official and individual capacities;
ROSA PORTER, in her official and individual
capacities; and TOM GRUNDEN, in his official
and individual capacities.                                                   DEFENDANTS

## ORDER

On August 24, 2009, the parties were directed to brief the issues of abstention under

*Younger v. Harris*, 401 U.S. 37 (1971); the *Rooker-Feldman* doctrine, *see Rooker v. Fidelity*

*Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460

U.S. 462 (1983); and *Heck v. Humphrey*, 512 U.S. 477 (1994).  For the reasons stated below,

abstention is appropriate.

## I.  COMPLAINT ALLEGATIONS

Accepting as true all of the factual allegations contained in the complaint, defendant

LRCMHC is a health care facility that enforces the release conditions for mentally ill citizens

acquitted of a crime under Arkansas Code Annotated § 5-2-314 ("Act 911").  Because

LRCMHC is a non-profit organization that may claim to be immune from suit, plaintiff Carl

Jackson asserts its actions against defendant Safeco National Insurance Company ("Safeco") as a provider of liability insurance to LRCMHC pursuant to Arkansas Code Annotated § 23-79-40.  Defendant Kimberly Williams was the Act 911 Program Manager at LRCMHC, was responsible for the policies and practices of the LRCMHC, and was a counselor for Jackson during LRCMHC's custody of him.  Defendants Patrena Tabron and Tracy Davis were social work caseworkers employed by LRCMHC and assigned to plaintiff during his custody. Defendant B.J. Robison was the Act 911 Compliance Monitor for the Arkansas Department of Health and Human Services ("ADHHS").  Defendants Dr. Greg Kuczinski, Rosa Porter, and Tom Grunden, as policy makers, had control or direction over Jackson during his assignment to LRCMHC and collaborated and conspired with the other defendants to violate Jackson's rights.

In October 2006, plaintiff Carl Jackson was acquitted of certain misdemeanor criminal charges against him by reason of his mental illness, and the Pulaski County Court granted him a conditional release under Act 911.  The terms of Jackson's release required him to be under the five-year custody and supervision of LRCMHC "to ensure compliance with his prescribed medication and treatment regimen."  The Pulaski County Court required him to take all recommended medication, comply with any recommended therapy, refrain from leaving the state "without prior authorization from the treatment team," and to submit to regular drug tests.

The treatment regime was designed and administered by defendants Williams and LRCMHC.  For several months during Jackson's custody at LRCMHC, his counseling was

assigned to defendants Tabron and Davis, who had previous reports of sexual harassment against them by patients.  Defendants Williams and LRCMHC were aware, or should have been aware of these reports, but they did not terminate or institute appropriate supervision over Tabron and Davis, and put in place no meaningful corrective or preventative measures to prevent sexual harassment.  During official house visits required by LRCMHC, Tabron told Jackson that Davis was sexually attracted to him and attempted to facilitate a relationship between Jackson and Davis.  Also, during these house visits, Davis sexually harassed Jackson in an unwanted, severe, and pervasive manner by personally expressing her attraction to him, regularly soliciting him, and making crude and unprofessional sexual advances, even after Jackson emphatically demanded that she stop.

Jackson reported this behavior to Williams, who initially refused to let him file a formal grievance, telling him that no procedure was in place for Act 911 patients.  At some point thereafter, however, Jackson was allowed to file a grievance.  Williams instructed Jackson not to tell anyone of the harassment, but Jackson stated he would speak about it if he wished.

In June 2007, Jackson received permission from LRCMHC's treatment team to travel to California to visit friends and family.  When Jackson left for California, Williams reported Jackson to B.J. Robison, falsely alleging that Jackson had violated the terms of his conditional release by leaving the state without the court's permission, although Williams knew that Jackson's conditional release did not require court approval for interstate trips. The report was in retaliation against Jackson for his charge of sexual harassment and exercise

of free speech.  Williams admitted the retaliation when she testified that Jackson had been instructed not to talk about the sexual harassment allegations and that his refusal to be silent was "defiant."  For these reasons, the treatment team refused his pass to go to California.

Robison reported Jackson to the Pulaski County Court, although he knew that Jackson's conditional release did not require court approval for interstate trips, resulting in Jackson's wrongful thirteen day detention at the Arkansas State Hospital.  The Pulaski County Circuit Court declined to revoke or otherwise alter Jackson's conditional release, announcing that LRCMHC and Robison's charges were "frivolous," "foolish," and a waste of government resources.

Despite the first judge's admonishments, Robison and LRCMHC represented to a different Pulaski County Circuit judge the same lies regarding court approval for interstate trips.  This resulted in Jackson being ordered to house arrest and additional restrictions on his conditions of release.  Ultimately, Jackson spent 108 days incarcerated in the Arkansas State Hospital.

In August 2007, the Pulaski County Circuit Court transferred Jackson to the custody of a new mental health center.  As a result of his mistreatment at LRCMHC and the resulting stress from that mistreatment, Jackson has been diagnosed with Post Traumatic Stress Disorder, has frequent flashbacks and nightmares of the harassment and retaliation, and his HIV prematurely and unexpected progressed to AIDS.  He also suffered emotional distress and damage to his reputation, self regard, and quality of life.

Jackson brings suit pursuant to 42 U.S.C. § 1983 asserting that defendants violated his constitutional rights to procedural and substantive due process under the Fourteenth, First, and Eighth Amendments through the following actions:

a) Subjecting him to severe and pervasive sexual harassment;

b) Denying him adequate access to a formal grievance procedure;

c) Attempting to restrain his free speech on the issue of harassment;

d) Retaliating against his exercise of free speech;

e) Retaliating against his protected right to report sexual harassment;

f) Knowingly issuing a false progress report to the court; and

g) Maintaining a policy and practice which provided inadequate or nonexistent protective procedures for Act 911 patients who allege harassment.

He also brings pendent claims under the Arkansas Civil Rights Act of 1993 ("ACRA"), Arkansas Code Annotated § 16-123-101, *et seq*., as well as common law claims for outrage, malicious prosecution, negligent hiring, supervision, and retention of case workers, and negligence in making a false report to the court.  Jackson seeks declaratory and injunctive relief, and monetary damages.

## II. *YOUNGER* ABSTENTION

*Younger* abstention is appropriate.  In *Younger*, "the Supreme Court advanced the position that federal courts should refrain from interfering with pending state judicial proceedings absent extraordinary circumstances."  *Harmon v. City of Kansas City*, 197 F.3d 321, 325 (8th Cir. 1999).  "Under *Younger*, abstention is warranted if the action complained of constitutes the basis of an ongoing state judicial proceeding, the proceedings implicate important state interests, and an adequate opportunity exists in the state proceedings to raise constitutional challenges."  *Id*.  If all three factors are present, a federal court should abstain unless it detects bad faith, harassment, or extraordinary circumstances that would make abstention inappropriate.  *Night Clubs, Inc. v. City of Fort Smith*, 163 F.3d 475, 479 (8th Cir. 1998).  "When monetary damages are sought in addition to injunctive relief and the federal court is not asked to declare a state statute unconstitutional in order to award damages, the case should not be dismissed."  *Yamaha Motor Corp., U.S.A. v. Stroud*, 179 F.3d 598, 603-04 (8th Cir. 1999).  "[A] stay rather than a dismissal is the preferred procedure to use in abstaining."  *Id*.

In *Coley v. Clinton*, 635 F.2d 1364, 1371 (8th Cir. 1980), the Eighth Circuit found that abstention as to the state judicial action involved in the commitment and release of criminal defendants was compelled under *Younger*.  The court noted that the "state court proceedings for commitment are "in aid of and closely related to criminal statutes.'"  *Id*. (citing *Moore v. Sims*, 442 U.S. 415, 423 (1979); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)).  "Therefore the doctrines of comity and federalism set forth in *Younger* preclude federal court

intervention by way of injunctive or declaratory relief in the absence of a showing of bad faith on the part of the state in maintaining the proceedings, exceptional circumstances, or other limited grounds recognized by the Supreme Court as an exception to the *Younger* rule." *Id.* (citing *Kugler v. Helfant*, 421 U.S. 117, 124 (1975); *Dombrowski v. Pfister*, 380 U.S. 479 (1965)).  The court found that *Huffman* foreclosed the argument that state court proceedings were no longer pending since the date of commitment to the state mental hospital.  *Id.  See also Shelton v. Reddy*, 221 F.3d 1343, 2000 WL 949188, *1 (8th Cir. 2000) (unpublished) (holding that abstention was appropriate where the state court had scheduled a hearing on the issue of forcible administration of medication as the medical treatment of people committed to state mental institutions is an important state interest and the state hearing provided an adequate opportunity for the plaintiff to raise constitutional issues).

In this district, Judge George Howard, Jr. held that *Younger* abstention was appropriate where the plaintiff requested that the court "grant injunctive relief by ordering the Defendants to provide him with 'a fair evaluation and a court hearing,' so that he [could] challenge his mental evaluation which resulted in his allegedly 'false placement' into the Act 911 Program."  *Mills v. Anderson*, Case No. 4:05-cv-00575-GH (E.D. Ark. Sept. 14, 2006) (Doc. Nos. 49 and 52), *aff'd*, 271 Fed. Appx. 551 (8th Cir. March 31, 2008) (unpublished). Judge Howard noted that Judge Susan Webber Wright had dismissed a previous case filed by the plaintiff under *Younger* because "the injunctive relief requested by Plaintiff was inappropriate to the extent it requested a federal court to intervene in an ongoing state criminal proceeding."  *Id.* (citing *Mills v. Laser, et al.*, No. 03-3732) (8th Cir. slip op. Sept.

7, 2004) (unpublished *per curiam*) (affirming but modifying to clarify that the dismissal was *without* prejudice).

As to whether there is an ongoing state judicial proceeding, defendants state that Jackson's order of conditional release was entered on October 18, 2006, and remains in effect until October 18, 2011. *See* Ark. Code Ann. § 5-2-316(b)(1) ("Within five (5) years after the most recent order of conditional release is issued pursuant to § 5-2-314 or § 5-2-315 and after notice to the conditionally released person and a hearing, the court may determine that the conditionally released person has violated a condition of release or that for the safety of the conditionally released person or for the safety of the person or property of another the conditional release should be modified or revoked."). Defendants assert that Jackson is presently subject to the exclusive jurisdiction of the circuit court. Ark. Code Ann. § 5-2-317(a) ("A circuit court has exclusive jurisdiction over a person acquitted by reason of mental disease or defect and committed to the custody of the Department of Health and Human Services pursuant to § 5-2-314(b)."); Ark. Code Ann. § 5-2-315(c)(2)(B)(iii) (requiring the circuit court to order as an explicit condition of release that "compliance with the conditions of release be documented with the circuit court by the compliance monitor at ninety-day intervals or at such intervals as the court may order").

The record shows that the actions of which Jackson complains constitutes the basis of an ongoing state judicial proceeding, namely the proceedings under the Act 911 program. Additionally, the proceedings implicate important state interests, and an adequate opportunity exists in the state proceedings to raise constitutional challenges.

-8-

## III. *HECK* BAR

Jackson's claims are *Heck*-barred. In *Preisier v. Rodriguez*, 411 U.S. 475 (1973), the Supreme Court considered the overlap between 42 U.S.C. § 1983 and 28 U.S.C. § 2254, the habeas corpus statute, and "held that habeas corpus is the exclusive remedy for state a prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." *Heck*, 512 U.S. at 481. Subsequently, in *Heck*, the Court applied the *Preisier* rule to a case where the prisoner sought monetary damages pursuant to 42 U.S.C. § 1983 against prosecutors and a state police investigator who allegedly unconstitutionally caused his conviction by improperly investigating his crime and destroying evidence. *Id*. at 479, 481. *See also Wolff v. McDonnell*, 418 U.S. 539 (1974) (holding that a prisoner's claim for good-time credits was foreclosed by *Preisier*).

The Court in *Heck* held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment

Case 4:09-cv-00257-BSM   Document 48   Filed 12/17/09   Page 10 of 13

against the plaintiff, the action should be allowed to proceed, in the absence
of some other bar to the suit.

512 U.S. at 486-87.  The Court also found that if a case is allowed to proceed, the plaintiff

must prove actual, compensable injury, which "does *not* encompass the 'injury' of being

convicted and imprisoned (until his conviction has been overturned)," to recover

compensatory damages.  *Id*. at 487 n.7.

Courts have held that *Heck* bars a plaintiff's suit under § 1983 in similar

circumstances.  *See Hubbs v. County of San Bernadino*, 538 F. Supp. 2d 1254, 1263 (C.D.

Cal. 2008) (holding that plaintiff's claims challenging the court's probable cause

determination that plaintiff was a sexually violent predator were barred by *Heck* because a

determination that no probable cause existed would necessarily imply the invalidity of

plaintiff's civil commitment); *Grass v. Kettle*, Case No. 08-4127-CV-C-NKL, 2008 WL

3200751, *2-3 (W.D. Mo. June 25, 2008) (holding that abstention was appropriate under

*Younger* and *Heck* where plaintiff, an individual confined in the state mental institution due

to his plea of not guilty by reason of insanity, had not challenged his state sentence to

confinement through habeas corpus after exhausting all adequate and available state court

remedies, and state court proceedings were ongoing).

In *Mills v. Anderson*, Case No. 4:05-cv-00575-GH (E.D. Ark. Sept. 14, 2006) (Doc.

Nos. 49 and 52), discussed above with regard to *Younger* abstention, Judge Howard held that

"[t]o the extent that Plaintiff claims *money damages* from Defendants based on his mental

evaluation (and resulting acquittal and placement in the Act 911 Program), such a claim is

barred by *Heck v. Humphrey*, 512 U.S. 477 (1994)." *See also Cleveland v. Arkansas Partnership Program*, Case No. 4:01-cv-00710 GTE (E.D. Ark. Nov. 1, 2002) (Doc. No. 25) (dismissing plaintiff's § 1983 claim for money damages where there was no indication that the acquittee exhausted state court remedies by applying for discharge or appealing), *aff'd* 65 Fed. Appx. 586 (8th Cir. June 12, 2003) (unpublished).

In *Jones v. Cunningham*, 371 U.S. 236, 242 (1963), the United States Supreme Court held that a paroled prisoner was in the custody and control of the parole board where there were "significant restraints on petitioner's liberty . . . which are in addition to those imposed by the State upon the public generally." Thus, the parolee could bring an action for habeas corpus. *Id.* at 243. Of course, a petitioner must exhaust state court remedies before petitioning for habeas corpus. *See Beaulieu v. Minnesota*, 583 F.3d 570, 573 (8th Cir. 2009). Here, it appears that Jackson's conditional release imposes significant restraints on his liberty in addition to those imposed by the State, and thus, habeas corpus would be available upon exhaustion of state court remedies.

Here, Jackson is asking the fact finder to conclude that he was subjected to sexual harassment, and in an attempt to silence him and in retaliation for Jackson's failure to remain silent, the defendants issued a false progress report to the state court resulting in his wrongful confinement in the Arkansas State Hospital and wrongful alterations of his conditions of release. A finding in Jackson's favor would necessarily imply the invalidity of Jackson's confinement at the Arkansas State Hospital and the alterations of his conditions of release. Despite the court's request for additional information regarding the state court proceedings,

Jackson has submitted no evidence that his confinement in the Arkansas State Hospital and the alterations of his conditions of release have been invalidated or that he has exhausted all available state court remedies. Therefore, his claims are barred under *Heck*.

## IV. *ROOKER-FELDMAN* DOCTRINE

Jurisdiction is lacking pursuant to the *Rooker-Feldman* doctrine. "Federal courts, with the exception of the United States Supreme Court, do not possess appellate jurisdiction over state court proceedings." *Keene Corp. v. Cass*, 908 F.2d 293, 296 (8th Cir. 1990) (citing cases). "Although a federal district court may not possess appellate jurisdiction to review a state court judgment, it may exercise jurisdiction over a general constitutional challenge made in a federal proceeding as long as the constitutional challenge is not 'inextricably intertwined' with claims asserted in a state court proceeding." *Id*. (citing cases). "Under the *Feldman* doctrine, the federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Id*. (quoting *Pennzoil Co. v. Texaco, Inc*., 481 U.S. 1, 25 (1987) (Marshall, J., concurring)). "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." *Id*. at 296-97.

"Where a litigant attempts to circumvent the requirement of seeking direct review in the United States Supreme Court by casting her lawsuit as a section 1983 action, *Feldman*'s jurisdictional bar applies." *Id*. at 297 (citing cases). "Similarly, the *Feldman* doctrine applies to claims for both injunctive and declaratory relief." *Id*. "[T]here is no procedural due

process exception to the *Rooker-Feldman* doctrine.  *Postma v. First Federal Sav. & Loan of Sioux City*, 74 F.3d 160, 162 n.3 (8th Cir. 1996) (citing cases).

As discussed above, Jackson's federal claim succeeds only to the extent that the state court judge wrongly decided the issues before it, particularly the issue of his placement in the Arkansas State Hospital.  Thus, his claim is inextricably intertwined with the state court judgment and jurisdiction is lacking under *Rooker-Feldman*.

## V.  CONCLUSION

Abstention is appropriate under *Younger* as to Jackson's claims for injunctive and declaratory relief.  Jackson's claims for monetary damages are barred under *Heck*.  Finally, jurisdiction is lacking under the *Rooker-Feldman* doctrine.

The interplay between the abstention doctrines in this context–a case in which the lines between criminal and civil proceedings are blurred–is complex.  It should also be noted that the current record continues to leave many questions concerning the state court judicial proceedings and Jackson's status under the Act 911 program unanswered.  Due to these factors, the guidance of the Eighth Circuit will be welcomed and warmly received.

Accordingly, plaintiff's complaint is dismissed without prejudice.

IT IS SO ORDERED THIS 17th day of December, 2009.

_____
UNITED STATES DISTRICT JUDGE